Gary W. FREED, Plaintiff-Appellee,

v.

The TRAVELERS, and Cooper-Jarrett, Inc., Defendants-Appellants.

No. 13489.

United States Court of Appeals Seventh Circuit.

Feb. 21, 1962.

Rehearing Denied April 9, 1962.

Thomas D. Allen, David Jacker, John M. O'Connor, Jr., Chicago, Ill., Charles E. Shepherd, Chicago, Ill., of counsel, for appellants.

Tom L. Yates, Chicago, Ill., William J. Sheridan, Chicago, Ill., for appellee.

Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

Gary W. Freed, plaintiff-appellee, brought this diversity action in the District Court against The Travelers, a corporation, and Cooper-Jarrett, Inc., an interstate motor carrier, seeking a declaration that he was covered by an insurance policy issued by defendant-appellant Travelers to defendant-appellant Cooper-Jarrett; a declaration that Travelers defend him in three personal injury actions resulting from a collision in which a truck tractor driven by him was involved; and that Travelers pay the attorney fees and other costs and expenses incurred by plaintiff in relation to the personal injury actions and the instant suit.

The case was tried without a jury and the court gave judgment for the plaintiff, including as an element of damages $4573.80 incurred by plaintiff for attorney fees and expenses. Defendants appealed.

The main contested issues are:

(1) Whether the court erred in declaring that the plaintiff was an insured within the terms of the policy.

(2) Whether the court erred in giving judgment to the plaintiff for attorney fees and expenses.

On March 4, 1957, the plaintiff, Freed, leased a 1952 International tractor owned by him to Cooper-Jarrett for a period of one year. Cooper-Jarrett is a trucking concern engaged in long distance hauling pursuant to a certificate issued by the Interstate Commerce Commission. It employed Freed as driver. The written lease covering the tractor required Freed to deliver it to Cooper-Jarrett "in good running order and condition" and "hold [it] ready at all times for the services of the Lessee, making such trips as are required by the Lessee at times chosen by the Lessee". Freed drove the tractor in the hauling of freight shipments in Cooper-Jarrett's trailers from the latter's Chicago terminal to the East Coast and back. Rental for the tractor was paid on a per ton basis at the conclusion of each round-trip, less amounts ad-

vanced to the driver at each end as driver's pay and computed on a per mile basis. Freed received the driver advances directly from Cooper-Jarrett but under an arrangement the latter had with one Hadley, who leased trailers to Cooper-Jarrett and also operated a garage where Freed purchased gasoline and oil and had his tractor serviced, the balance of the tractor rental due Freed was remitted by Cooper-Jarrett to Hadley, who in turn paid it to Freed after first deducting amounts due Hadley for gasoline, oil, servicing, etc., and any amounts Hadley had paid for maintenance or repair work on the tractor.[1] In August, 1957, repairs to the rear end of the tractor, totalling $412.44, were made at the Wallace Garage in Chicago. Hadley paid for the repairs, which were billed to him at Cooper-Jarrett's, and deducted the $412.44 from monies he received from Cooper-Jarrett as tractor rental due Freed. The parts installed proved to be defective and on September 12, 1957, Freed, after delivering a trailer he had hauled from the East Coast to the Cooper-Jarrett terminal, and having the tractor fueled and serviced at Hadley's, as was his custom, proceeded to the Wallace Garage for the purpose of having the corrective work done on the earlier repairs. En route to the garage the tractor was involved in a multiple vehicle collision which resulted in three personal injury suits in each of which both Cooper-Jarrett and Freed were named as defendants.

At the time of the September 12, 1957 collision Cooper-Jarrett was a named insured in a comprehensive liability policy issued by Travelers and then in effect. Travelers refused to defend and indemnify Freed. It based such refusal on the ground that at the time of the accident Freed's operation of the tractor was not in an activity which afforded him coverage under the terms of the policy. The policy contains a "Receipts Basis—

Truckmen (Form A)" endorsement, relied upon by Travelers, which provides:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Automobile Medical Payments and for Property Damage Liability applies with respect to all owned automobiles and hired automobiles, and the use, in the business of the named insured, of non-owned automobiles, subject to the following provisions:

"1. Definition of Insured. As respects such insurance, Insuring Agreement III, Definition of Insured, is replaced by the following:

With respect to the insurance for Bodily Injury Liability and for Property Damage Liability the unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile. The insurance with respect to any person or organization other than the named insured does not apply:

"(a) except with respect to an employee of the named insured, to any person or organization, or to any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or for others, with respect to any automobile of the commercial type (1) unless the accident

1. The tractor lease gave Cooper-Jarrett the "right to pay all accounts covering various charges incurred in connection with the operation and the use of the equipment [tractor] and charge the same to the account of Lessor".

occurs while such automobile is being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority, or (2) * * *

provided, however, a driver or other person furnished to the named insured with an automobile hired by the named insured shall not be deemed an employee of the named insured; * * *

"(d) with respect to any hired automobile, to the owner or any lessee of such automobile, or to any agent or employee of such owner or lessee, if the accident occurs (1) while such automobile is not being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority, * * *."

The District Court found and concluded that at the time of the collision Freed was an insured entitled to defense and indemnification under the policy. The amount and the reasonableness of the attorney fees and expenses incurred were stipulated. The court found the defendants liable for these items and entered judgment therefor.

■ The defendants contend that at the time of the collision Freed was excluded from the policy's coverage because the tractor was not being used exclusively in the business of Cooper-Jarrett and that since no freight was being hauled at the time it was not being operated over an authorized route.

The defendants do not urge that the major repair work done on the tractor was not necessary to its continued operation in Cooper-Jarrett's business but they argue that Freed was responsible for repairs under the lease and, consequently, in returning the tractor to the garage for the additional work necessitated by the defective parts he was on a personal journey. The record discloses that the collision occurred after the completion of an interstate trip for Cooper-Jarrett and before the designation or commencement of a new trip, and that no one at Cooper-Jarrett's had directed Freed to take the tractor to the garage. In addition the lease required Freed to bear the cost of the "various charges incurred in connection with the operation and use" of the tractor (and under Cooper-Jarrett's arrangement Hadley had deducted the cost of the prior repair work from tractor rental due Freed). But the lease also provided that the tractor "shall not be operated under any condition for personal use by the Lessor * * * without written permission from the Lessee". The prohibition against use by the lessor not only is in accord with a general order of the Interstate Commerce Commission that such leases provide for the exclusive possession, control and use of the equipment and for the complete assumption of responsibility in respect thereto by the lessee [2] but, in our opinion, on the facts here involved, confirms that the procurement of repairs incident to lessor's duty to hold the tractor "ready at all times for services of the lessee" is to be regarded as an activity exclusively in the business of the lessee and not a personal use of the tractor by Freed.

Moreover, Cooper-Jarrett's duty to maintain the tractor "in safe and proper operating condition" while it was subject to its control [3] is not a duty which may be delegated to the lessee with the effect of removing its performance from the sphere of Cooper-Jarrett's business activities. Cf. Turnbow v. Hayes Freight Lines, Inc., 15 Ill.App.2d 57, 145 N.E.2d 377, 66 A.L.R.2d 1075.

Defendant's reliance upon Hawkeye Casualty Co. v. Halferty, 8 Cir., 131 F.2d

---

2. General Order of the Interstate Commerce Commission, Ex Parte No. MC 43, Secs. 207(a) (4), 49 C.F.R. 207 et seq.

3. General Order of the Interstate Commerce Commission, 49 C.F.R., Sec. 196.2.

294 and Foster v. Commercial Standard Insurance Co., 10 Cir., 121 F.2d 117 is misplaced. In Halferty the operation in which the truck was engaged at the time of the accident had no relation to the insured's business as a common carrier and in Foster the insured trucker was using the truck to return his mother-in-law to her home following a visit with the trucker's family, a purpose having no connection with his certificated contract carrier operation to which coverage of the policy was expressly limited.

Cooper-Jarrett's certified routes and territory under its federal and state certifications included, in each case, the "Chicago Commercial Zone", which area embraced the location of the garage utilized for the repair work. We find no merit in defendants' contention that because the tractor was not hauling freight at the time of the accident it was not operating over an authorized route i. e., that the route or territory is "authorized" only when freight is being transported.

In so far as the issue of policy coverage is concerned the District Court's factual findings are amply supported by the record and we perceive no error of law in the conclusions the court reached.

▆▆▆ Plaintiff's complaint, in addition to the other relief prayed, sought recovery of attorney fees and expenses incurred in the present action and in the three personal injury suits. The District Court entered judgment in the total amount of $4573.80 for these items. The record discloses $4200.00 of this amount is for attorney fees and the balance for other expenses and that it was stipulated the amounts were incurred and are reasonable. The stipulation is not contained in the record on appeal and there is nothing before us to show the allocation of the aggregate sum among the four actions—this proceeding and the three personal injury actions—or how much, if any, of the aggregate sum represents attorney fees or expenses incurred in connection with the instant declaratory judgment proceeding. In the posture in which we find the record de-

fandants' contention that an Illinois statute (Ill.Rev.Stat.1959, Ch. 73, § 767) precludes a recovery in excess of $500.00 for attorney fees in an action against an insurance company in which liability of the company on a policy is in issue, affords no basis upon which error may be predicated. We will not impute error where the record does not require it. And, assuming the Illinois statute is applicable to this declaratory judgment proceeding (Cf. McDaniel v. Standard Accident Insurance Company, 7 Cir., 221 F.2d 171) there is nothing to show that its limitation was exceeded. The limitation applies to the allowance of attorney fees as taxable costs to the successful plaintiff in the action against the company. It does not apply to limit the *damages* recoverable against the company in such action for breach of its contractual duty. And here attorney fees and expenses incurred in connection with the three personal injury actions were elements of damage included in the monetary judgment entered. Attorney fees and expenses of litigation in other actions may constitute proper elements of damage in an action in chief. Clapper v. Original Tractor Cab Company, 7 Cir., 270 F.2d 616, 623–624. The District Court did not err in including those items as elements of plaintiff's damages in this case. And the record before us is silent with respect to what amount was included for attorney fees or expenses incurred in this action. Thus, there is no basis in the record for defendants' contention that the monetary judgment is excessive.

▆▆ Defendants' further contention that the District Court erred in granting substantive relief in the form of a monetary judgment in a declaratory judgment proceeding is without merit. Texasteel Mfg. Co. v. Seaboard Surety Co., 5 Cir., 158 F.2d 90, 91; Security Insurance Company of New Haven v. White, 10 Cir., 236 F.2d 215.

The judgment order of the District Court is affirmed.

Affirmed.